Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 773 | **DATE** | 4/18/2000 |
| **CASE TITLE** | Thomas J. Moriarty vs. Hills Funeral Home | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Supplemental Memorandum Opinion and Order. What has been said here gives full and definitive amplification to this Court's views expressed orally on March 24, 2000. Pepper's motion to reconsider this Court's March 21, 2000 memorandum opinion and order is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | 4-20-00 date docketed | |
| | Notified counsel by telephone. | | 96 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 4/18/2000 date mailed notice | |
| SN | courtroom deputy's initials | SN mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS J. MORIARTY, Trustee, on )
behalf of the TRUSTEES OF THE )
LOCAL UNION NO. 727 I.B.T. PENSION )
TRUST and TRUSTEES OF THE )
TEAMSTERS LOCAL UNION NO. 727 )
HEALTH AND WELFARE TRUST, )
                                          )
              Plaintiff, )
                                          )
v.                                )   No. 98 C 773
                                          )
HILLS FUNERAL HOME, LTD., et al., )
                                          )
              Defendants. )

DOCKETED APR 20 2000

## SUPPLEMENTAL MEMORANDUM OPINION AND ORDER

On March 21, 2000 this Court issued an order granting judgment as to liability to plaintiff Thomas Moriarty as Trustee ("Moriarty") on the claims he asserts against each of the defendants. On March 22, 2000 defendant George Pepper ("Pepper") filed a motion to reconsider that order, asserting that in consequence of our Court of Appeals' decision in <u>Moriarty v. Glueckert Funeral Home, Ltd.</u>, No. 99-1352, 2000 WL 32004 (7th Cir. Jan. 12))[1] Moriarty is foreclosed by issue preclusion

---

[1] Because that unpublished opinion dealt with appeals in three different cases and because the one on which Pepper seeks to rely addressed Moriarty's action against Hitzeman Funeral Home, Limited ("Hitzeman"), it will be referred to here as "<u>Hitzeman II</u>." Citations to that opinion will take the form "<u>Hitzeman II</u> at *--," referring to the Westlaw * pagination but omitting the case's docket number and the lengthy WL citation.

principles (Pepper's counsel uses the older label of "collateral estoppel"[2]) from arguing that Pepper had agreed to be bound by the relevant collective bargaining agreements ("CBAs") when he joined the Funeral Directors Services Association ("Association").

On March 24, 2000 the parties appeared before this Court for a hearing on Pepper's motion to reconsider. This Court then ruled orally that the motion should be denied for two reasons:

1. Pepper had waived the issue preclusion defense by failing to raise it as soon as it became available.

2. Even if the defense had been raised in a timely fashion, it would have failed on the merits.

What follows is an elaboration of that oral ruling, which this Court had then indicated would be forthcoming.

Motions to reconsider interlocutory orders are not literally provided for in any of the Federal Rules of Civil Procedure ("Rules"). Instead they are common law motions addressed to a court's inherent power to modify orders in a pending case before

---

[2] In accordance with this Court's regular practice, this opinion follows the teaching exemplified by <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 77 n.1 (1984) by employing the term "issue preclusion"--except, of course, when quoting from authorities that use "collateral estoppel."

final judgment (Peterson v. Lindner, 765 F.2d 698, 704 (7th Cir. 1985)). In the context of motions to reconsider final judgments (which are also not literally provided for in any Rule), courts have frequently spoken in terms such as those voiced in Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990), quoting Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983):

> A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

That level of inhospitability to motions for reconsideration does not apply with equal force where, as here, the earlier opinion was interlocutory--in this instance, a determination as to liability only. But where the purported ground for reconsideration was a matter that was already available as an affirmative defense to liability (as it was here) but that was not advanced by Pepper when liability was under consideration (and it was not), considerations of waiver come into play. More on this subject a bit later.

3

Pepper argues that the Court of Appeals' decision in Hitzeman II is a controlling change in the law that would have constituted a ground for reconsideration even of a final order. Not so. As Bank of Waunakee, 906 F.2d at 1191 makes clear, a controlling change in the law is a viable ground for such reconsideration only if it occurs after the issue is submitted to the court for decision. In this instance the issue preclusion argument that Pepper now raises became available to him almost a full year ago--on April 29, 1999, when Judge Kocoras rendered his opinion (No. 98 C 3563, 1999 WL 286077 (N.D. Ill. Apr. 29)[3]) in Hitzeman's favor (see, e.g., Prymer v. Ogden, 29 F.3d 1208, 1213 n.2 (7th Cir. 1994) and cases cited there).

As if that were not enough (and it is, as the ensuing discussion shows), it will be recalled that our Court of Appeals affirmed Judge Kocoras' decision on January 12 of this year, giving Pepper ample opportunity to have raised the issue during the two-month-plus period that elapsed before this Court rendered its opinion resolving the summary judgment motions in Moriarty's favor. Inexplicably, even though Pepper's counsel admits he was

---

[3] Citations to that decision at the District Court level will take the form "Hitzeman I at *--," again referring to the Westlaw * pagination but omitting the docket number and lengthy WL citation.

4

aware of Judge Kocoras' <u>Hitzeman I</u> decision and even cited it in another respect in his memorandum opposing summary judgment, he did not raise the issue preclusion contention until after summary judgment had been ordered against Pepper.

Most importantly for present purposes, even in the interlocutory order situation that sequence of events constitutes a waiver of the defense, just as it would have barred a comparably late assertion (say) of a statute of limitations defense. Such affirmative defenses (see Rule 8(c), listing "estoppel" as well as "statute of limitations") must ordinarily be pleaded in the answer, or they will be found to have been waived (see 18 Charles A. Wright, Arthur R. Miller & Edward H Cooper, <u>Federal Practice and Procedure: Jurisdiction</u> §4405, at 34 (1981), stating "The reference to estoppel [in Rule 8(c)] has been treated as including collateral estoppel"). By the same token, when as in this instance such a preclusion defense does not become available until later in the litigation, it must be raised "at the first reasonable opportunity after the rendering of the decision having the preclusive effect" (<u>Aetna Cas. & Sur. Co. v. General Dynamics Corp.</u>, 968 F.2d 707, 711 (8th Cir. 1992)).

It is really an understatement to say that Pepper had plenty of time between April 29, 1999 (when Judge Kocoras rendered his

5

Hitzeman I decision) and March 21, 2000 (when this Court rendered its decision here) to raise the issue preclusion defense, either by seeking leave to amend Pepper's answer or simply by arguing the point in his summary judgment motion. By holding that argument in abeyance until judgment as to liability had been rendered against him, Pepper has waived the issue preclusion defense.

This conclusion finds solid support in the caselaw. For example, in American Nat'l Bank & Trust Co. v. RTA, 125 F.3d 420 (7th Cir. 1997) defendant sought leave, after the trial was completed, to amend its answer to assert an issue preclusion defense. Although the state court decision on which that defense relied had not been issued at the time of trial, the district court denied the motion to amend because defendant's counsel had been aware of the possible issue preclusion defense and "there [had been] ample basis and opportunity to raise collateral estoppel as an affirmative defense earlier" (id. at 429 (internal quotation marks and citation omitted)). Because defendant "was aware of the state court litigation and the theories it was pressing there, but did not list collateral estoppel as an issue in the pretrial order" (id. at 429), our Court of Appeals affirmed the district court's decision (id. at 430).

In an important sense, the argument for waiver here is even stronger than in <u>American Nat'l Bank</u>. If failing to raise an <u>inchoate</u> affirmative defense of which a defendant is aware can constitute a waiver, certainly Pepper's failure to assert issue preclusion based on a decision issued nearly a year <u>before</u> he had to face the imminent possibility of an adverse summary judgment in this action constitutes such a waiver. There is a sharp contrast between a case such as <u>Kern Oil & Refining Co. v. Tenneco Oil Co.</u>, 840 F.2d 730, 735 (9th Cir. 1988), which held that a defendant who did not raise issue preclusion until after trial had waived that defense, and <u>Cotton States Mut. Ins. Co. v. Anderson</u>, 749 F.2d 663, 665-66 (11th Cir. 1984), which permitted an appellee to raise issue preclusion for the first time at oral argument on appeal because the decision with the preclusive effect had not been rendered until after judgment was entered and after the parties had filed their appellate briefs.

But suppose that no such waiver were operative, or that Pepper had timely asserted his issue preclusion argument. Even then he would not have prevailed. It must be remembered that issue preclusion will bar relitigation of an issue only if the four elements reiterated in <u>La Preferida, Inc. v. Cerveceria Modelo S.A. de C.V.</u>, 914 F.2d 900, 906 (7th Cir. 1990) have been

7

met:

> 1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

Pepper cannot satisfy the first element, because the issue decided in <u>Hitzeman I</u> and <u>Hitzeman II</u> is materially different from the one presented by Pepper's case.

<u>Hitzeman II</u> did not, as Pepper seems to believe, hold that a funeral home owner's express agreement to abide by the Association's Constitution can never evidence an intent to be bound. It rather held that owner Hitzeman's agreement to do so could not support an inference of such an intent in light of the circumstances presented in that case. As is typical of issues involving intent, the intent-to-be-bound inquiry is wholly dependent on the facts of an individual case (see <u>Moriarty v. Glueckert Funeral Home, Ltd.</u>, 155 F.3d 859, 866-67 (7th Cir. 1998), listing the factors to be evaluated in determining whether an employer had an unequivocal intent to be bound). Thus <u>Hitzeman II</u> would have preclusive effect only if the facts of Pepper's case were identical (in the legal sense) to those in <u>Hitzeman II</u>. As a brief description of that case illustrates,

8

they are not.

Hitzeman is a family-run funeral home started by Norbert Hitzeman ("Norbert") and now owned by Norbert's son Todd ("Todd"), Todd's wife Susan ("Susan") and Todd's sister Jan ("Jan"). Hitzeman joined the Association in 1962, and in 1979 Norbert signed a membership record that said Hitzeman agreed to be bound by the Association's Constitution, By-laws, Rules and Regulations. At that time the Constitution, the same one that was in effect when Pepper joined the Association, stated:

> Association...shall authorize the President to appoint a committee to represent the members of the Association in labor negotiations...and to enter into such agreements as a result of the negotiations, subject to the approval of the membership.

Like Pepper, Hitzeman did not make any contributions to the Funds. And like Pepper, the Hitzemans chose not to attend Association's meetings at which the CBAs were discussed.

But there the factual matrices diverge sharply, and in critical fashion. Unlike Pepper, Hitzeman had its own pension plan, and an insurance plan that covered Todd and Susan (Hitzeman I at *2, Hitzeman II at *4). Moreover, on several occasions between 1979 and 1990 Moriarty assured Norbert and Todd that the funeral home was not required to contribute to the Funds on behalf of Todd, Jan or any other shareholder (Hitzeman I at

9

\*2-3, Hitzeman II at \*4). And importantly, the contributions sought from Hitzeman were for the very owner-shareholders that were the subject of Moriarty's assurances (Hitzeman I at \*3, Hitzeman II at \*4)--a situation vitally different from that in Pepper's case. Given those assurances by Moriarty that no contributions were due on account of the owner-shareholders and given Hitzeman's conduct in establishing its own employee benefit plans, our Court of Appeals affirmed Judge Kocoras' holding that Hitzeman had not manifested an unequivocal intent to be bound by the CBAs despite its agreement to abide by the Association's Constitution (see Hitzeman II at \*4).

By sharp contrast, Pepper did not have separate insurance or pension plans for his employees. Nor was he ever told by Moriarty or anyone else from the Funds that he was not required to make contributions. And the persons with respect to whom contributions are sought from Pepper, unlike the Hitzeman principals, were not owners of the funeral home (a category of persons whom the Funds generally excuse from contributing, Hitzeman I at \*3 n.2). Thus the best evidence of Pepper's intent remains his express contractual agreement to abide by Association's Constitution. Because the issue that this Court has decided in this case is different from the one that our Court

10

of Appeals decided in Hitzeman II, Pepper's issue preclusion argument would have failed even if he had raised it in a timely fashion.

## Conclusion

What has been said here gives full and definitive amplification to this Court's views expressed orally on March 24, 2000. Pepper's motion to reconsider this Court's March 21, 2000 memorandum opinion and order is denied.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 18, 2000