# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 773 | **DATE** | 8/10/2000 |
| **CASE TITLE** | Thomas J. Moriarty vs. Hills Funeral Home, LTd. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order, Hills' Rule 56 motion is granted. There is not genuine issue of material fact as to Hills' indemnification claims against Pepper, and Hills is entitled to a judgment as a matter of law in that respect is ordered to be entered in favor of Hills and against Pepper on Hills' cross-claim against Pepper. (97-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 11 2000 | |
| | Docketing to mail notices. | | date docketed | 107 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 8/11/2000 | |
| SN | courtroom deputy's initials | FILED FOR DOCKETING 00 AUG 11 AM 7:52 | date mailed notice | |
| | | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS J. MORIARTY, Trustee, on )
behalf of the TRUSTEES OF THE )
LOCAL UNION NO. 727 I.B.T. PENSION )
TRUST and TRUSTEES OF THE )
TEAMSTERS LOCAL UNION NO. 727 )
HEALTH AND WELFARE TRUST, )
 )
 )
Plaintiff, )
 )
v. ) No. 98 C 773
 )
HILLS FUNERAL HOME, LTD., et al., )
 )
Defendants. )

MEMORANDUM OPINION AND ORDER

Thomas Moriarty ("Moriarty") brought this action against Hills Funeral Home, Ltd. ("Hills") and George Pepper a/k/a George Peppas ("Pepper") to recover unpaid employer contributions owed to Moriarty as Trustee for the Local Union No. 727 Pension Trust and the Teamsters Local Union No. 727 Health and Welfare Trust (collectively "Funds"). Hills later filed what it called a breach of contract and indemnification counterclaim (but was, more precisely, a cross-claim--see Fed. R. Civ. P. ("Rule") 3(g)) against Pepper. On March 21, 2000 this Court issued an order granting Moriarty summary judgment on his Complaint as to joint and several liability against both defendants.

Now Hills has filed a Rule 56 summary judgment motion on its cross-claim against Pepper, and both of those parties have

DOCKETED
AUG 11 2000

/07

complied with this District Court's related LR 56.1.[1] For the reasons stated in this memorandum opinion and order, Hills' Rule 56 motion is granted.

## Summary Judgment Standards

Familiar Rule 56 principles impose on Hills the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (St. Louis N. Joint Venture v. P & L Enters., Inc., 116 F.3d 262, 265 n.2 (7th Cir. 1997)). As Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999) has more recently quoted from Roger v. Yellow Freight Sys., Inc., 21 F.3d 146, 149 (7th Cir. 1994):

> A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.

## Facts

About November 5, 1997 Frank and Jason Leonard (collectively "Leonards") entered into an Asset Purchase Agreement

---

[1] LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence of any factual disputes. This opinion cites to Hills' LR 56.1(a) statement as "H. St. ¶--" (because there is really no quarrel as to the facts, only "H. St." needs to be cited). That same "H." abbreviation, and a "P." abbreviation for Pepper's submissions, are used in referring to the parties' other filings.

("Agreement") to purchase from Pepper certain assets of the funeral home that he was then operating as a sole proprietor under the name Hills Funeral Home (H. St. ¶3). In the Agreement "Purchasers" were defined as "Frank J. Leonard and Jason C. Leonard, or nominee," while "Seller" was defined as "George Douglas Pepper (formerly known as George Douglas Peppas) d/b/a Hills Funeral Home and d/b/a Olympic Hill Chapel" (Agreement ¶1(A) and its signature page). After closing under the Agreement about January 28, 1998, Leonards began operating the funeral home through a new corporate entity, Hills (H. St. ¶4).

Shortly thereafter Moriarty filed suit on behalf of Funds against Pepper and Hills to recover unpaid employee contributions allegedly owed to Funds pursuant to the terms of a collective bargaining agreement ("CBA") for the period of Pepper's operation (see this Court's March 21, 2000 opinion ("Opinion") reported at 93 F.Supp.2d 910).[2] As stated earlier, Moriarty then filed a motion for summary judgment against both defendants (H. St. ¶18), resulting in this Court's determinations (1) that Pepper was bound by the terms of the CBA and was thus liable to Funds for unpaid contributions (Opinion at 918) and (2) that Hills was Pepper's successor as a matter of law and, as such, was also liable (id.). Because Pepper had not paid his debt to Funds

---

[2] Further citations to the Opinion will take the form "Opinion at --," omitting the F.Supp.2d volume number but listing its page number.

3

before the closing under the Agreement, Hills later filed its current motion for summary judgment against Pepper, seeking indemnity against the judgment pursuant to the Agreement's indemnification provision.

### Hills' Standing

This Court has already dispatched orally, but it will again confirm the total frivolousness of, Pepper's threshold argument that Hills is not entitled to invoke the Agreement's indemnification provision "because it is not a party to the Agreement" (P. Mem. 2). After all, the Agreement's term "Purchaser" embraced both Leonards "or nominee"--the conventional language that puts purchasers into a position to decide at their pleasure just what style they want to employ for the conduct of an acquired business: whether in corporate form, or as a partnership, or in some other manner that they may choose.

In this instance Leonards chose to form a corporation, Hills, to acquire the assets and to carry on the business--<u>and Pepper knew it</u>. Any contention that Hills was not a party to the Agreement, so that it is not entitled to enforce the Agreement's provisions, cannot be advanced by Pepper and his counsel in good faith--surely not in objective good faith, and even their subjective good faith is suspect (at a minimum). This opinion turns then to the relevant provisions of the Agreement.

## Scope of the Indemnification Provision

Hills contends that Pepper's breach of several of the Agreement's representations and warranties was established as a matter of law when this Court determined that Pepper was bound by the terms of the CBA and was therefore liable to Funds for unpaid employer contributions. Hills further contends that based upon those breaches Pepper must indemnify it against any liability to Funds on its part.

For Hills to prevail at this summary judgment stage, it must show that, even with Pepper given the benefit of any reasonable factual inferences:

1. Pepper breached a warranty or representation contained in the Agreement and

2. that warranty or representation falls within the purview of the Agreement's indemnification provision.

Although Hills asserts that Pepper breached an entire group of the Agreement's other provisions,[3] the parties' memoranda have focused particularly on Agreement ¶27(A)(c):

> Seller is not a party to any collective bargaining agreements. Seller represents and warrants that no sums are due any Union as the result of Seller's business operations.

---

[3] In addition to the provision quoted next in the text, Hills also cites Agreement ¶¶1(A)(f), 10(a), 12(E), 12(I)(a), 12(J) and 27(A)(b) as examples of other provisions that were breached by Pepper. As the later discussion reflects, Agreement ¶27(A)(b) turns out to be the critical provision that dooms Pepper.

5

As to the first of those sentences, its falsity has already been established by the Opinion's holding that Pepper was in fact a party to the CBA (Opinion at 918). Pepper focuses instead on the second sentence, urging the absence of any misrepresentation because Pepper did not say there that no sums were due to any "Funds," but rather than no sums were due to any "Union." Hence Pepper argues that with no falsehood having been uttered on that score, his liability to Funds does not fall within the purview of the indemnification provision. Hills conversely argues that the terms "Union" and "Funds" were used by the parties synonymously, so that Pepper's liability <u>either</u> to the "Union" or to "Funds" constituted a breach of that representation and warranty.

That however is a dispute that this opinion need not tackle at all. And that is so because the dispute, as so framed, is too narrowly focused--it misses the home truth that the Agreement's indemnification provision is all-encompassing, embracing <u>all</u> of Pepper's representations and warranties. This opinion therefore turns to that subject.

<u>Charter Bank v. Eckert</u>, 223 Ill.App.3d 918, 925, 585 N.E.2d 1304, 1310 (5th Dist. 1992)(internal citations omitted) explains the principles of contract construction applicable to an indemnity agreement:

> An indemnity agreement is to be construed as any other contract, and under the rules of contract construction, the intention of the parties is the paramount concern. When construing an agreement to indemnify, the

6

> agreement must be given a fair and reasonable
> interpretation based upon a consideration of all the
> language and provisions....An indemnity agreement must
> be set forth in clear and explicit language so that an
> indemnitor's obligations are manifestly determinable.

Omnitrus Merging Corp. v. Illinois Tool Works, Inc., 256 Ill.App.3d 31, 34, 628 N.E.2d 1165, 1168 (1st Dist. 1993) (internal quotation marks omitted) relatedly teaches this as to the judicial function in that regard (it is of course black-letter law that the interpretation of unambiguous contract provisions is a question of law for the court to resolve):

> Clear and unambiguous contract terms must be given
> their ordinary and natural meaning and contracts must
> be interpreted as a whole, giving meaning and effect to
> each provision thereof.

Those principles inform the meaning to be given by this Court to Agreement ¶27(B):

> The representations and warranties made herein shall be
> deemed restated at closing and shall survive the
> closing of this transaction and shall be the personal
> representations and warranties of the beneficiaries of
> Seller....Seller shall indemnify and hold harmless
> Purchasers from and against any and all loss, cost,
> damage and expense (including reasonable attorney fees)
> arising directly or indirectly, in whole or in part,
> from any inaccuracy in, or breach of, Seller's
> representations and warranties contained here.

Even when viewed in a light most favorable to Pepper, the ordinary and natural meaning of that undertaking is neither ambiguous nor limited in scope. For one thing, it includes no language that would even suggest a narrowed breadth. Instead Agreement ¶27(B) uses such catchall phrases as "any and all,"

7

"arising directly or indirectly" and "in whole or in part." Nor does the language, as Pepper's impermissibly narrow perspective would suggest, confine the scope of application of the indemnity provision to the single representation and warranty that is set out in Agreement ¶27(A)(c). Not only does Agreement ¶27(B) speak in plural terms--"representations and warranties" rather than "representation and warranty"--but a look at the various representations and warranties elsewhere in the Agreement[4] confirms the utter absurdity of any notion that a rational purchaser would be content with the survival and financial enforceability of only a single representation by its seller, leaving it without a comparable remedy if any of the seller's other representations turned out to be false. And by the same token, no seller could reasonably expect to have the host of his other representations disappear post-closing, leaving the buyer without that bargained-for protection.

It is important to note that a number of the Agreement's provisions--see, e.g., Agreement ¶¶1(A)(B)(iii) and (iv), 12(H)(iii), 12(K) and 27(A)(b) and (e)--though they do not employ the express words "represent and warrant," are of the selfsame character. For present purposes it is unnecessary to consider in that regard whether either a variant of "represent" or "warrant"

---

[4] Numerous other representations or warranties appear at Agreement ¶¶1(A)(b)(ii)(5), 1(A)(e), 9(A), 12(A) through (K), 25 and 27(A)(a) through (e).

8

is a magic word (or whether a pairing of such variants is a magic combination) that must be included in every such provision to trigger the operation of Agreement ¶27(B)'s indemnification obligation if what Pepper has said there turns out to be untruthful. Instead, what is plain beyond peradventure, and what dooms Pepper, is that Agreement ¶27(A)(b) *is* unquestionably a "representation" within the meaning of the indemnification provision--for though Agreement ¶27(A)(b) does not itself contain that word, it is part of Agreement ¶27 with its express caption of "ADDITIONAL SELLER REPRESENTATIONS."[5]

In sum, Pepper's sole concentration on Agreement ¶27(A)(c), as though that were the only representation or warranty to which Agreement ¶27(B)'s duty of indemnification would apply, defies rationality. Instead it is crystal-clear that the word "herein," found within the terms "made herein" and "contained herein" in Agreement ¶27(B), has the normal meaning of "anywhere in this Agreement."[6] Accordingly Agreement ¶27(B) plainly requires

---

[5] In the same way, Agreement ¶12(C) and part of ¶12(D) also do not contain either word, yet they are specifically placed within Agreement ¶12 with its caption of "SELLERS' REPRESENTATIONS."

[6] That normal meaning of "herein" is further buttressed by the use of the same phraseology--"representations and warranties made herein"--in the far-separated Agreement ¶1(A)(b)(1). Indeed, this point alone demonstrates the emptiness of Pepper's position. Even if an effort were made to ascribe a lesser scope to "herein," that lesser scope could not of course encompass only Agreement ¶27(B) itself--that provision contains no representations and warranties of its own. And if the scope

9

Pepper to indemnify Hills against <u>any</u> breach of any representation or warranty contained in the Agreement.

### Breach of Representations and Warranties

Because Pepper must indemnify Hills against the breach of <u>any</u> representation or warranty in the Agreement, it only remains to determine whether Pepper's liability to Funds established any such breach as a matter of law. And the short answer, as suggested by Hill's contention that there are several Agreement provisions that establish such liability, is an easy "yes." For in Agreement ¶27(A)(b) Pepper <u>expressly</u> represented that "Seller is not in default under any contracts made or obligations owed by Seller." That provision is clear and unambiguous: "Any contract" certainly includes the CBA, and "obligations owed by Seller" equally certainly include Pepper's obligations to Funds. Without question Pepper (1) was bound by the CBA and (2) was liable to Funds for his unpaid employer contributions.

It follows perforce that Pepper was in default of a contract (the CBA) although he specifically represented in Agreement ¶27(A)(b) that he was not, and that he was also in default of obligations owed to Funds although he once again specifically represented in Agreement ¶27(A)(b) that he was not. And those

---

merely extended (say) to other provisions of Agreement ¶27, what conceivable argument could be advanced for limiting that extension to Agreement ¶27(A)(c) and not applying it to Agreement ¶27(A)(b), discussed in the next section of the text? Any way you look at it, Pepper's contention falls of its own weight.

10

things being so, Pepper is unquestionably in breach of the representations and warranties he made in Agreement ¶27(A)(b) and must therefore indemnify Hills against liability to Funds under Agreement ¶27(B).

That conclusion is all of a piece with the Agreement's clearly manifested intent that Hills was not to assume Pepper's liabilities. For example, Agreement ¶1(A)(f)(emphasis in original) reads:

> The parties expressly acknowledge that Seller's Liabilities, of whatsoever nature or kind, accruing prior to the Closing, and NOT being assumed by Purchasers, with the exception of the servicing of certain of the aforesaid Pre-Needs contracts.

And that is similarly the thrust of Agreement ¶12.D and 12.E:

> D. There is not and at closing there will not be any outstanding contract for services, management, employment, union, supplies, or other executory contract that would be binding upon the Purchasers, other than contracts terminable by Purchasers without penalty on thirty (30) days notice, and any such terminable contracts will be furnished to Purchasers within ten (10) days of execution of this contract for Purchasers' approval....
>
> E. Seller agrees to pay and discharge when due all liabilities and obligations of Seller relating to the business, the assets or any leases/executory contracts accruing prior to closing.

All of those provisions are equally clear and unambiguous. Again catch-all phrases and terms such as "any," "of whatsoever nature or kind" and "all" are used to describe the liabilities that had accrued prior to closing and that would remain Pepper's responsibility. Pepper plainly promised Hills that all of his

11

obligations relating to the funeral home business either had been or would be satisfied prior to the closing.

Those provisions simply link up to what has been said earlier in this opinion. They further buttress the conclusion reached here that as a matter of law, by reason of his outstanding employer contributions that had not been paid to Funds before the closing under the Agreement, Pepper is in breach of the representations and warranties made to Hills in the Agreement. Although Hills also cites several other provisions of the Agreement that it says further supports its contention that Pepper must indemnify it against his liability to Funds, it is unnecessary to go further: What has already been said here is conclusive against Pepper.

## Conclusion

There is no genuine issue of material fact as to Hills' indemnification claims against Pepper, and Hills is entitled to a judgment as a matter of law in that respect. Judgment is ordered to be entered in favor of Hills and against Pepper on Hills' cross-claim against Pepper.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 10, 2000